

**In the United States District Court
for the Eastern District of Virginia,
Alexandria Division**

JAMES DEY, 101 e N. Rock Glen Avenue,
      Baltimore, MD 21229
      (973) 919-6346

    and

KWAKU SEKYERE, 2420 Arbor Court,
      May Landing, NJ 08330
      (703) 296-1937

      Plaintiffs *Pro Se*,

    v.

D.C. CAPITAL PARTNERS, LLC, KASEMAN, LLC,
SIRIAM MENOM; individually and in his capacity
as Technical Director,  and MARK BAKER;
individually and in his capacity as supervisor,
KEITH YI; individually, and DAVID EVAZZADEH;
individually,  (jointly and severally),

      Defendants.

Case no.: *1:12 cv 315 AJT/IDD*

**COMPLAINT AND JURY DEMAND**

        Plaintiffs James Dey and Kwaku Sekyere, jointly *pro se* plaintiffs and *persons sui juris* of full age and sound mind, do hereby complain against the Defendants, D.C. Capital Partners, LLC., Kaseman, LLC, Siriam Menom, Mark Baker, Keith Yi and David Evazzadeh as follows:

<u>STATEMENT OF CLAIMS</u>

        1.      This is an action to vindicate violations of the Plaintiffs' civil rights and to redress the unlawful discriminatory and retaliatory conduct and employment practices of the Defendants. This action arises out of the illegal and wrongful discharge of Messrs. James Dey and Kwaku Sekyere on or about August 19, 2009 and October 2, 2009 respectively.  Messrs. Dey and Sekyere allege, *inter alia*, that they were terminated from their employment based, in whole or in part, upon their race and their native African ethnicity in violation of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981.

2.     Further, Plaintiffs bring this action against D.C. Capital Partners, LLC and Kaseman, LLC (hereinafter, "Kaseman Defendants") for violating their employment contract rights as created by the Kaseman Defendants' own employee handbook and company compliance policies, which the plaintiffs reasonably believed were intended to govern the rights and duties of the Kaseman Defendants and their employees within the context of their employment relationship and which also guaranteed employees, including the plaintiffs, progressive disciplinary procedures and protections from arbitrary terminations.

3.     Plaintiffs Dey and Sekyere also bring this action against the defendants for retaliating against them for engaging in protected activity by terminating them from their employment positions as system engineers with the Kaseman Defendants in violation of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981.

4.     Plaintiffs Dey and Sekyere also bring this action against the defendants for casting their professional competencies in a false light and injuring their reputation in the systems engineering profession, to colleagues, the Virginia Department of Labor ("VDOL") and Maryland Department of Labor ("MDOL"), and also to prospective employers with actual knowledge that the statements were false, and recklessly and negligently failing to determine the veracity of their representations with knowledge that same would be published to Plaintiffs' prospective employers and to VDOL and MDOL.

5.     Further, Plaintiffs Dey and Sekyere also bring this action against the defendants for interfering with their prospective employment opportunities by wrongfully casting their professional reputations in a false light, and by recklessly and negligently furnishing untrue evaluations to Plaintiffs' prospective employers.  Due to the negligence and recklessness of the defendants in furnishing untrue professional references and performance evaluations to prospective employers, Plaintiffs have been denied lucrative employment opportunities with reputable systems engineering and information technology companies.

6.     Further, Messrs. James Dey and Kwaku Sekyere allege that the Kaseman Defendants' disciplinary action and termination policies, because they were *ad hoc* and mainly unwritten, were allowed to be tainted, biased and/or implemented in a discriminatory and retaliatory manner against the Plaintiffs.  Through the foregoing shortcomings from which the terminations of Plaintiffs Dey and Sekyere arose, the Kaseman Defendants terminated the plaintiffs arbitrarily and without implied due process.

7.     As a result of the Defendants' discriminatory and retaliatory conduct and employment practices and violations of Plaintiff Dey's rights protected by federal law, Plaintiff Dey was discharged from his employment on or about August 19, 2009.  Subsequently, Plaintiff Sekyere was also terminated on October 2, 2009, immediately after the defendants received a letter of demand from Plaintiff Dey's counsel concerning his unlawful termination.

8.      Consequently, Plaintiffs now seek injunctive relief; monetary damages, including back pay, front pay, if applicable, compensatory and punitive damages; and attorneys fees and costs, pursuant to Title VII of the Civil Rights Act of 1964, as amended, specifically 42 *U.S.C.* Sections 2000e, *et seq.*; the Civil Rights Act of 1866, as amended; specifically 42 *U.S.C.* Section 1981, 42 U.S.C. Section 1981A and 42 U.S.C. Section 1988.  Plaintiffs Dey and Sekyere also bring tort and contract claims under the common law of Virginia.

<u>PARTIES</u>

9.      Plaintiff James Dey ("Dey") is a naturalized citizen of the United States born in Ghana, Africa, and who resides at 101 - e North Rock Glen Avenue, Baltimore, Maryland 21229. At all times relevant to this complaint, Plaintiff Dey was an employee of the Kaseman Defendants, within the meaning of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Sections 2000e, *et seq.*, and applicable case law.

10.     Plaintiff Kwaku Sekyere ("Sekyere") is a naturalized citizen of the United States also born in Ghana, Africa, and who resides at 2420 Arbor Court, Mays Landing, New Jersey 08330.  At all times relevant to this complaint, Plaintiff Sekyere was an employee of the Kaseman Defendants, within the meaning of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section 2000e, et seq., and applicable case law.

11.     Defendant D.C. Capital Partners, LLC ("D.C. Capital Partners"), is a company or similar business entity authorized to conduct business in Washington, DC and with principal business offices located at 975 F Street NW, Suite 1050, Washington DC 20004.  Upon information and belief, Defendant D.C. Capital Partners is the parent/affiliate/partner company of Defendant Kaseman, LLC.  It is sued under the doctrines of *respondeat superior*, accession and ratification.

12.     Defendant Kaseman, LLC ("Kaseman") is a company or similar business entity organized and existing under the laws of the State of Virginia, and which regularly conducts business at 1600 Tysons Boulevard, Suite 1400, McLean, Virginia 22102.  Upon information and belief, Defendant Kaseman, LLC is the subsidiary/affiliate/partner company of Defendant D.C. Capital Partners, LLC.

13.     At all relevant times, the Kaseman Defendants employed in excess of fifteen employees and were employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Sections 2000e, *et seq.*

14.     Defendant Siriam Menon ("Menon"), an Asian male, is an adult individual and citizen of the United States who resides in Virginia.  At all relevant times, Defendant Menon was the Director of Systems Architecture and a senior managerial employee of the Kaseman Defendants.  Upon information and belief and at all relevant times, Defendant Menon is located at 1600 Tysons Boulevard, Suite 1400, McLean, Virginia 22102.

3

15.     Defendant Mark Baker ("Baker"), a Caucasian male, is an adult individual and citizen of the United States who resides in Virginia.  At all relevant times, Defendant Baker was a Project Group Manager at the Systems Engineering Division and a managerial employee of the Kaseman Defendants.  Upon information and belief and at all relevant times, Defendant Baker is located at 1600 Tysons Boulevard, Suite 1400, McLean, Virginia 22102.

16.     Defendant Keith Yi ("Yi"), an Asian male, is an adult individual and citizen of the United States whose current residential address remains unknown.  Plaintiffs will promptly amend this complaint when Defendant Yi's address is ascertained.  At all relevant times, Defendant Yi was a Systems Engineer and a non-managerial employee directly supervised by Defendant Baker.

17.     Defendant David Evazzadeh ("Evazzadeh") is an adult male of unknown ethnicity and citizen of the United States whose current residential address remains unknown at this time.  Plaintiffs will promptly amend this complaint when Defendant Evazzadeh's address is ascertained.  At all relevant times, Defendant Evazzadeh was a Systems Engineer and a non-managerial employee directly supervised by Defendant Baker.

<u>JURISDICTION AND VENUE</u>

18.     This is, in part, an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981, 42 *U.S.C.* Section 1981A, 42 *U.S.C.* Section 1988, and the common law of the State of Virginia.

19.     The jurisdiction of this Court is predicated upon 28 *U.S.C.* Section 1331 and 1343, to redress the unlawful deprivation of Plaintiffs' rights secured, guaranteed and protected by federal law.  The Court also has jurisdiction pursuant to 28 *U.S.C.* Sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise pendent jurisdiction over Plaintiffs' state law claims arising under the common law and statutes of the State of Virginia, and which arise from a common nucleus of operative fact pursuant to 28 *U.S.C.* Section 1367.

20.     Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 *U.S.C.* Section 1391(b), wherein at least one plaintiff resided at the time of the wrongful conduct, all Defendants regularly conduct business and where all the wrongful conduct hereinafter alleged occurred.

<u>ADMINISTRATIVE PREREQUISITES</u>

21.     Plaintiffs Dey and Sekyere have complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Sections 2000e-5 as follows:

a) Plaintiffs filed formal charges of discrimination with the State of Virginia Human Rights Council ("VHRC") which were simultaneously filed with the Equal Employment Opportunity Commission ("EEOC");

b) Plaintiffs promptly and diligently accommodated all VHRC and EEOC requests for information and fully cooperated in the agencys' investigation of this matter;

c) Plaintiffs have exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and Counsel for Plaintiffs formally requested a Notice of Right to Sue from the EEOC on or about December 6, 2011.

22.     No administrative prerequisites are required before a Plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981.

<u>FACTUAL ALLEGATIONS</u>

23.     Plaintiffs Dey and Sekyere were employed as Systems Engineers by the Kaseman Defendants on or about the same day, April 18, 2008 and worked at the same Kaseman location until they were both terminated by the Kaseman Defendants.

24.     At all relevant times, the Kaseman Defendants employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2006, 2007 and 2008, and was further engaged in an industry directly affecting global and interstate commerce.

25.     At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of the Plaintiffs' employment were governed and controlled by the Kaseman Defendants.

26.     Upon information and belief and at all relevant times, Defendants Menon, Baker, Yi and Evazzadeh were acting as the principals, contractors, consultants, agents, servants and/or employees of the Kaseman Defendants. The Kaseman Defendants are therefore liable for the acts and omissions of the individual Defendants pursuant to the principals of ratification, *respondeat superior* and actual and/or implied agency.

27.     At all relevant times, Plaintiffs Dey and Sekyere fully, adequately and completely performed all of the functions, duties and responsibilities of their employment with the Kaseman Defendants.

28.     Upon information and belief and at all relevant times, the Plaintiffs and all individual Defendants were organized into and together belonged to a project group called the "Baker Group," which was supervised by Defendant Baker, who in turn reported to and was supervised by Defendant Menon.

29.     Upon information and belief and at all relevant times, Plaintiffs were the only black, African-American and/or ethnic African system engineers within the Baker Group.

30.     At all relevant times, the Kaseman Defendants had a non-specific and largely unwritten policy regarding racial discrimination and ethnic intimidation in the workplace. Pursuant to the Kaseman Defendants non-specific employment practices and policies, racial discrimination consists of and is limited to disparate treatment in the hiring and firing of employees based on race.

31.     Upon information and belief and as set forth herein, the Kaseman Defendants applied this policy in a manner that discriminates against its employees on the basis of race, ethnicity and national origin.

32.     Upon information and belief and at all relevant times the Defendants were always punctual and often arrived at their work stations ahead of their scheduled start times and before any of their colleagues.

33.     Upon information and belief, neither of the Plaintiffs received a professional job performance evaluation, as was customary and as they had fully expected after ninety (90) days of employment with the Kaseman Defendants ("probationary period); however, neither did they receive any complaints about their job performance during subject probationary period.

34.     Subsequently, on or about July 16, 2009, at or around 3:20 p.m., Plaintiff Dey and Defendant Yi became engaged in a professional disagreement over presentation of vendor data in a joint project (hereinafter, "incident of July 16, 2009").

35.     During the ensuing argument, Plaintiff Dey remained calm while Defendant Yi grew progressively loud and menacing to the extent that several co-workers including Plaintiff Sekyere left their workstations to inquire about the altercation.  Upon information and belief, Defendant Yi told Plaintiff Dey, who had seniority status over Defendant Yi by virtue of beginning employment with the Kaseman Defendants approximately five (5) months before him, that Plaintiff Dey was wasting his time and then further told him: "f**k you."

36.     Although, Plaintiff Dey considered Defendant Yi's position to be unnecessarily contrived and personally abusive he agreed to compromise in the spirit of professional reconciliation and team collaboration.

37.     Immediately following mutual compromise of the professional disagreement, the work environment at Kaseman Defendants suddenly turned decidedly "toxic" and factional *inter alia* several colleagues on Baker Team completely refused to acknowledge Plaintiff Dey's presence and/or ignored his input completely.

38.     Upon information and belief, Defendant Eyvazzadeh, an even more recent hire than Defendant Yi, subsequently told Plaintiff Dey to first apologize to Defendant Yi before he would listen or talk to me.

39.     As a result of the foregoing incidents of workplace discrimination, retaliation and bullying Plaintiff Dey felt discriminated against and "ganged up on" unnecessarily, essentially for engaging in protected activity of taking a professional stance against incompetence in a federal government contract and also bullied for being different – inescapably black, African-American and of ethnic African birth.

40.     Subsequently, Plaintiff Dey personally informed Defendant Baker of the foregoing incidents and further submitted a written version of same to him; however, there was no formal investigation ever conducted of the incident nor any disciplinary proceedings pursued by the Kaseman Defendants.

41.     On or about the following Monday, Defendant Baker suddenly instructed Plaintiff Dey to stop collaborating with the project group which included Defendants Yi and Eyvazzadeh and assigned him to a different task, which involved filing and "tabbing" vendor" reports – a task normally assigned to secretaries and clerks by job description.

42.     Aside from the humiliation of the clerical task Plaintiff Dey was assigned, Defendant Baker made it a point to persistently bully, berate and/or chide Plaintiff Dey for various pretextual infractions, including but not limited to belittling him for using the wrong type and color of paper and/or tabs while filing, for not having received updated version of documents and for allegedly making personal phone calls during meetings.

43.     Upon information and belief, Defendant Baker's attitude towards Plaintiff Dey, immediately following the incident of July 16, 2009 and thereafter, was degrading, hostile, trite, discriminatory, harassing, bullying, generally oppressive and fueled a very toxic workplace.

44.     The workplace became so stressful and toxic for Plaintiff Dey following the July 16, 2009 incident that he began to dread coming to work every morning.

45.     Upon information and belief and at all relevant times, no Asian and/or Caucasian technician or systems engineer under Mark Baker's supervision was ever similarly treated. Importantly, Plaintiff Dey was never again assigned another engineering related task by Defendant Baker for the remainder of his employment with the Kaseman Defendants.

46.     Subsequently, Plaintiff Dey submitted a request to Defendant Menon to be reassigned to a different project team so that he could gain varied experience and develop professionally, but Defendant Menon neglected or failed to act upon the request.

47.     Plaintiff Dey's first anniversary of employment with the Kaseman Defendants offered another opportunity for the Defendants to perform an objective professional job

performance evaluation; however, August 18, 2009 came and passed largely unnoticed and manifestly unrecognized by the Kaseman Defendants.

48.     The following day, August 19, 2009, at or around 3:00 p.m., Plaintiff Dey was summoned to Defendant Menon's office by Defendant Baker ostensibly for a general meeting. Plaintiff Dey was then informed that his employment relationship with Kaseman Defendants was being terminated immediately.

49.     Upon information and belief, the Kaseman Defendant did not terminate or in any way discipline and/or reprimand Defendant Yi with regard to the incident of July 16, 2009.

50.     Subsequently, the Kaseman Defendants defamed and retaliated against Defendant Dey by stating to the Maryland Department of Labor, Licensing and Regulation that he had been terminated for cause; specifically that he had performed below expectation, even though Defendant Dey had not been afforded with an objective assessment of his professional competence while employed by the Kaseman Defendants.

51.     Similarly, Plaintiff Sekyere was part of a team of systems engineers with the Kaseman Defendants and along with my co-complainant, James Dey, the only other ethnic African on this team.  However, Plaintiff Sekyere had a lot of personal contact with vendors and in several respects, was the face of the Kaseman Defendants to some of these vendors.

52.     Likewise, Plaintiff Sekyere did not receive a professional job performance evaluation, as was customary and as he had expected after ninety (90) days of employment with the respondents ("probationary period); however, neither did he receive any complaints about his job performance during the subject probationary period.

53.     On or about June 16, 2009, at or around 3:20 p.m., Plaintiff Sekyere completed a compilation of specifications for a vendor project.  As was customary, once he provided his input, he forwarded the partially completed project on to Defendant Baker for completion.

54.     Despite several reminders by conversation and electronic mail from Plaintiff Sekyere, several weeks passed without Defendant Baker presenting his contribution and critique of the project.  Upon information and belief, Plaintiff Sekyere even had the government vendor ask if there was a problem at Kaseman, which was affecting work output and was being secreted by the Kaseman Defendants.

55.     The following day, Plaintiff Sekyere forcefully conveyed his concerns to Defendant Baker *inter alia* he informed him that he thought the delay in submitting project specifications to the government vendor was professionally embarrassing and uncharacteristic of the work product of Kaseman.  Upon information and belief, Defendant Baker took offense

at the confrontation and immediately suggested that he would ensure prompt delivery of the specifications to the government vendor.

56.     Immediately following the foregoing confrontation Defendant Baker would no longer task Plaintiff Sekyere; however, he was able to remain busy by completing a number of open projects he was working on independently.

57.     Owing to Defendant Baker's position as his direct supervisor, Plaintiff Sekyere still had to submit his work product to him for his critique and approval before submission to outside vendors.  Upon information and belief, the vendors Plaintiff Sekyere dealt with personally consistently lauded and approved of his work ethic, however, Defendant Baker had taken to making inane and immaterial comments and digs at the quality of Plaintiff Sekyere's work, thus making the work environment hostile and toxic.

58.     Importantly, Defendant Baker's attitude towards Plaintiff Sekyere, immediately following the foregoing incident and thereafter, was retaliatory, discriminatory, trite, harassing, bullying, hostile and generally oppressive.

59.     The situation described in paragraph 11was so stressful and unbearable that I began to dread coming to work every morning.

60.     Upon information and belief and at all relevant times, the only other technician or engineer under Defendant Baker's direct supervision who was ever similarly mistreated was his co-Plaintiff, James Dey, who like him is a naturalized United States citizen of African birth. Upon information and belief, Plaintiff Sekyere was never again assigned another engineering related task by Defendant Baker for the remainder of my time with Kaseman LLC.

61.     As Plaintiff Sekyere's first anniversary with Kaseman drew near, he fully expected to receive an objective professional work performance evaluation from his supervisors or from the human resources department to assess and critique my professional performance during my time at Kaseman; however, August 18, 2009 came and passed largely unnoticed and manifestly unrecognized by the Kaseman Defendants.

62.     Upon information and belief, on or about September 29, 2009, the Kaseman Defendants received a letter of demand from Plaintiff Dey's erstwhile attorney with regard to the unlawful termination of Plaintiff Dey.

63.     Subsequently, on or about October 2, 2009, at or around 3:00 p.m., Plaintiff Sekyere was summoned to Defendant Menon's office by Defendant Baker ostensibly for a general meeting.  Plaintiff Sekyere was then informed that his employment relationship with the Kaseman Defendants was being terminated forthwith.  Upon information and belief, Plaintiff Sekyere was handed a letter of termination.

64.     Unlike Plaintiff Dey, Plaintiff Sekyere  immediately asked for an explanation of the reasons and purposes behind his termination and was told that his job performance was below unwritten and unspecified Kaseman standards, even though Plaintiff Sekyere had essentially been working independently and conducting unsupervised interstate business travel on behalf of the Kaseman Defendants and otherwise being the face of Kaseman to its government vendors and he was, moreover heretofore unaware, of any Kaseman standards either written or verbal, which in anyway described Kaseman standards of work product.

65.     Upon information and belief, no other employees of the Kaseman Defendants, except co-Plaintiff Dey has been held to the unspecified and unwritten Kaseman standards.

66.     Subsequently, the Kaseman Defendants defamed and retaliated against Plaintiff Sekyere by stating to the VDOL that he had been terminated for cause; and specifically that he had performed below expectation.  Upon information and belief, the Kaseman Defendants made this material misstatement with full knowledge, or would have had full knowledge with actual due diligence, that the statement was inaccurate since Plaintiff Sekyere had not been terminated for cause and that he had not been provided with an objective assessment of his professional competencies during his time with the Kaseman Defendants.

67.     In spite of said knowledge, the Kaseman Defendants persisted in making the self interested allegation to VDOL and then failed to show up at the VDOL hearing to defend their untrue statement even though they had ample notice to appear by telephone.

68.      As set forth more fully herein, similarly situated Asian and Caucasian technicians and systems engineers with less experience and inferior or similar skills were retained by the Kaseman Defendants.

<u>COUNT I – DISCRIMINATION  -- DISPARATE TREATMENT</u>

69.     Plaintiffs incorporate by this reference the preceding paragraphs 1 through 68 of the Plaintiffs Complaint as though same were set forth at length herein.

70.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, and 42 *U.S.C.* Section 1981A, for relief based upon the unlawful employment practices of the Kaseman Defendants.  Specifically, Plaintiffs Dey and Sekyere complain of Kaseman Defendants' violation of the Title VII prohibition against discrimination in employment based, in whole or in part, upon an employee's race, ethnicity and/or national origin.

71.     During their employment with the Kaseman Defendants, Plaintiffs Dey and Sekyere were members of a class protected under Title VII against race, ethnicity and/or national origin based discrimination by their employer, the Kaseman Defendants, or by their managerial and supervisory personnel.

72.     As set forth herein, Plaintiffs were the only black, African-American or ethnic African system engineers within the Baker Group.

73.     As set forth herein, on or about July 16, 2009, at or around 3:20 p.m., Plaintiff Dey and Defendant Yi, an Asian-American, became engaged in a professional disagreement over presentation of vendor data in a joint project. Separately, on or about June 17, 2009, Plaintiff Sekyere engaged in a professional dispute with Defendant Baker, a Caucasian-American, over meeting government vendor deadlines.

74.     Defendant Yi, an Asian-American male, was not terminated, disciplined and/or otherwise reprimanded for his infraction of the Kaseman Defendants' policy against abusive conduct against fellow employees.  To wit, neither was Defendant Baker terminated, disciplined and/or otherwise reprimanded for his infraction of the Kaseman Defendants' customer care policy.  To the contrary, both Defendants Yi and Baker were given special consideration, including, *inter alia*, flexible hours, pay increases and time off work.

75.     The Kaseman Defendants offered special consideration to its Asian and Caucasian employees in general, and its Asian employees in particular, who were willing to engage in abusive conduct against black/African-American/ethnic African employees, including waiving discipline for known infractions of company policy.

76.     Plaintiffs Dey and Sekyere, as black,African-American and ethnic African employees of the Kaseman Defendants, were therefore treated in a disparate manner and were subjected to the Kaseman Defendants'' unfair policies and practices insofar as that they were treated in an unequal manner and unlike Asian and Caucasian employees similarly situated with the Plaintiffs.  Upon information and belief, said unfair practices both limited the Plaintiffs in their professional development, wages and other benefits because of their race, color, and ethnicity, and further resulted in their discharge from employment on August 19, 2009 and October 2, 2009, respectively.

77.     The Kaseman Defendants, further denied Plaintiffs Dey and Sekyere equal employment opportunities because of their race, color and ethnicity, to wit:

>    i)     The reason given for Plaintiffs' discharge was a mere pretext for unlawful discrimination in that the Kaseman Defendants knew or should have known that Defendant Baker's accusations were uncreditable, suspect and uncorroborated;

>    ii     The Kaseman Defendants did not discipline or discharge similarly situated Asian or Caucasian employees, Defendants Yi and Baker, in that said employees had used vulgar and abusive language, and had threatened co-workers in a discriminatory manner;

>    iii)    The pretextual allegation that the Plaintiffs had failed to adhere to an undefined Kaseman standard, in fact, was itself discriminatory since no other

Asian or Caucasian employee had been held to the same standard. This fact was known or should have been known to the Kaseman Defendants, at the time of the Plaintiffs' discharge.

78. At all relevant times, the Kaseman Defendants knew that the discriminatory conduct complained of herein was without cause as Plaintiffs Dey and Sekyere had consistently satisfied and/or exceeded all the requirements of their position.

79. As a result of the Kaseman Defendants' employment policies, procedures and practices, Plaintiffs Dey and Sekyere were unjustly and discriminatorily deprived of equal employment opportunities because of race, color and ethnicity – unmistakenly black, African-American naturalized citizens born in Africa.

80. As a further result of the Kaseman Defendants' above stated actions, Plaintiffs Dey and Sekyere have been, are being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to them as employees, but denied because of their race, color and ethnicity, and in an amount to be proven at trial.

81. The above-named Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by the Plaintiffs.

82. Furthermore, Kaseman Defendants intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against the Plaintiffs, contrary to the Plaintiffs' federally protected rights as guaranteed to them under Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e et seq., as amended, and 42 *U.S.C.* Section 1981.

83. The intentional and discriminatory conduct of the Kaseman Defendants complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to the Kaseman Defendants and others who would commit similar illegal acts.

84. As the Kaseman Defendants engaged in discriminatory employment practices with malice or with reckless indifference to the Plaintiffs' federally protected rights, Plaintiffs Dey and Sekyere are entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e et seq., as amended, and 42 *U.S.C.* Section 1981A.

<u>COUNT II - Discrimination -- Disparate Impact</u>

85. Plaintiffs incorporate by this reference the preceding paragraphs 1 through 84 of the Plaintiffs Complaint as though same were set forth at length herein.

86. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, as amended, and 42 *U.S.C.* Section 1981, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiffs Dey and Sekyere complain of the Kaseman Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color and ethnicity.

87. Plaintiffs Dey and Sekyere are unmistakably black, African-American naturalized citizen of African birth and during their employment with the Kaseman Defendants were members of a class protected under Title VII against race based discrimination by their employer, the Kaseman Defendants, or their supervisory personnel.

88. At all relevant times, Plaintiffs Dey and Sekyere fully, adequately and completely performed all of the functions, duties and responsibilities of their employment with the Kaseman Defendants.

89. At all relevant times, the Kaseman Defendants allege that they operated a quality control system of "Kaseman standards" of work product ("system") within which it evaluated, monitored and critiqued its employees' competence and performance through an impartial, fair and unbiased process.

90. Upon information and belief, neither Plaintiff Dey nor Plaintiff Sekyere was ever informed of, evaluated by and/or critiqued within the system.

91. Because of the aforesaid Kaseman standards were *ad hoc*, unwritten, undescribed and did not incorporate an improvement plan, the system, as implemented by the Kaseman Defendants' supervisory staff, lent itself to be abused to arbitrarily and summarily terminate black, African-American and ethnically African employees without recourse. On the other hand, Asian and Caucasian employees benefited from the system since all the supervisors were Asian or Caucasian.

92. In addition, the Kaseman Defendants did not attempt to install, employ or recruit an ethnically diverse or racially sensitive supervisory staff to make the system fairer.

93. On information and belief, the Kaseman Defendants did not investigate the possibility of an alternative selection method that would eliminate racial bias from the system, have a less adverse impact on black, African-American and ethnically African employees, and/or otherwise ensure the fair representation of their interests.

94. Furthermore, the system, as implemented did not permit an appeals process and/or a way of challenging termination, or if an appeals process existed within the system same was not communicated to the Kaseman Defendants' employees.

95.     The Kaseman Defendants' system negatively impacts black, African-American and ethnically African employees in general, and ethnically African employees in particular, at a substantially higher rate than Asian and Caucasian employees and therefore has a significant discriminatory impact on ethnically African employees.

96.     As a result of the Kaseman Defendants' policies and practices, Plaintiffs Dey and Sekyere were unjustly and discriminatorily deprived of equal employment opportunities because of their race, color, ethnicity and national origin.

97.     As a further result of the Kaseman Defendants' above stated actions, Plaintiffs Dey and Sekyere have been, are being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to them as an employees, but denied because of their race, color, ethnicity and national origin and in an amount to be proven at trial.

<u>COUNT III – RETALIATION</u>

98.     Plaintiffs incorporate by this reference the preceding paragraphs 1 through 97 of the Plaintiffs Complaint as though same were set forth at length herein.

99.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, as amended, and 42 *U.S.C.* Section 1981, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiffs Dey and Sekyere complain of the Kaseman Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color and ethnicity.

100.     Plaintiffs Dey and Sekyere are unmistakably black, African-American, naturalized citizen of African birth and during their employment with the Kaseman Defendants were members of a class protected under Title VII against race based discrimination by their employer, the Kaseman Defendants, or their supervisory personnel.

101.     At all relevant times, Plaintiffs Dey and Sekyere fully, adequately and completely performed all of the functions, duties and responsibilities of their employment with the Kaseman Defendants.

102.     As set forth herein, on or about July 16, 2009, at or around 3:20 p.m., Plaintiff Dey and Defendant Yi, an Asian-American, became engaged in a professional disagreement over presentation of vendor data in a joint project. Separately, on or about June 17, 2009, Plaintiff Sekyere engaged in a professional dispute with Defendant Baker, a Caucasian-American, over meeting government vendor deadlines.

103.     Both of the foregoing incidents were related to the Plaintiffs' critique and efforts to improve and complete federal government contracts efficiently and on time, and were

therefore protected activity within the meaning of Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, as amended, and 42 *U.S.C.* Section 1981.

104.    On or about July 19, 2009 and thereafter, Plaintiff Dey, a systems engineer was removed from all technical tasks by Defendant Baker and assigned to clerical tasks, including *inter alia* filing and tabbing duties.

105.    Upon information and belief, Plaintiff Dey asked Defendant Menon to reassign him to a different project group so that he could resume collaborating in technical projects and he was rebuffed.

106.    Plaintiff Dey was terminated on or about August 19, 2009, and was provided with the pretextual reason that he had failed to perform to expectations when his performance had never been objectively evaluated.

107.    Separately, on or about June 17, 2009, Plaintiff Sekyere engaged in a professional dispute with Defendant Baker, a Caucasian-American, over meeting government vendor deadlines.  Upon information and belief and at all relevant times, Defendants Menon, Baker, Yi and Evazzadeh also knew and were aware that Plaintiffs Dey and Sekyere were friends and were of the same national origin.

108.    Immediately after the foregoing professional dispute, Defendant Baker refused to task Plaintiff Sekyere with any projects whatsoever.

109.    Thereafter, on or about September 29, 2009, the Kaseman Defendants received a letter of demand from Plaintiff Dey's erstwhile attorney related to Plaintiff Dey's putative appeal of his unlawful termination.

110.    Subsequently, on or about October 2, 2009, the Kaseman Defendants terminated Plaintiff Sekyere from employment with the Kaseman Defendants.

111.    Defendant Yi, an Asian-American male, was not terminated, disciplined and/or otherwise reprimanded for his infraction of the Kaseman Defendants' policy against abusive conduct against fellow employees.  To wit, neither was Defendant Baker terminated, disciplined and/or otherwise reprimanded for his infraction of the Kaseman Defendants' customer care policy.  To the contrary, both Defendants Yi and Baker were given special consideration, including, *inter alia*, flexible hours, pay increases and time off work.

112.    Further, on or about September 1, 2009, Plaintiff Dey submitted an application to MDOL for unemployment benefits. Upon information and belief, Plaintiff Dey's application to MDOL was contested by the Kaseman Defendants on the grounds that Plaintiff Dey had been terminated for cause.

113.    Subsequently, on or about November 1, 2009, Plaintiff Sekyere, then resident in the State of Virginia, submitted an application to VDOL for unemployment benefits. Upon information and belief, Plaintiff Sekyere's application to VDOL was also contested by the Kaseman Defendants on the grounds that Plaintiff Sekyere had been terminated for cause.

114.    However, when both MDOL and later VDOL gave the Kaseman Defendants several opportunities to appear at hearing by telephone, the Kaseman Defendants neglected to and failed to appear without providing reasons.

115.    Upon information and belief, the foregoing actions and malicious conduct were carried out to retaliate against the Plaintiffs for engaging in activity protected by Title VII of the Civil Rights Act of 1964; specifically 42 *U.S.C.* Section(s) 2000e *et seq.*, as amended, and 42 *U.S.C.* Section 1981.

116.    In further retaliation for Plaintiffs Dey and Sekyere's protected activities as hereinabove detailed, the Kaseman Defendants conspired and acted in concert to place inaccurate and falsified records upon the Plaintiffs' employment and disciplinary records.

117.    Furthermore, the inaccurate and false statements to the effect that the Plaintiffs performed below Kaseman standards and that they performed below expectation were intentionally manufactured and maintained upon the Plaintiffs' permanent employment record by the Kaseman Defendants and furnished to several potential employers by the Kaseman Defendants, in retaliation and reprisal for the Plaintiffs' protected conduct as hereinabove detailed.

118.    Moreover, the statement that both Plaintiffs were discharged for not performing to Kaseman standards and for performing below expectations were blatantly and intentionally false because same were not good and sufficient reasons for termination within the context of the provisions of the Kaseman Defendants' employee disciplinary policies. The truth being that both Plaintiffs were talented and competent systems engineers, who happened to be black, naturalized African-American citizens of the United States born in Africa.

119.    As a result of the Kaseman Defendants' policies and foregoing practices as hereinabove outlined, Plaintiffs Dey and Sekyere were unjustly and discriminatorily deprived of equal employment opportunities in reprisal and retaliation for engaging in protected activity, including inter alia associating with each other and criticizing methods of completing federal government contracts.

120.    Additionally, the Kaseman Defendants communicated the untrue statements that the Plaintiffs were discharged for failing to meet Kaseman standards and for performing below expectations to several reputable prospective employers and government agencies, including but not limited to MDOL and VDOL, which admitted relying upon the statement the statements herein detailed to initially deny the Plaintiffs unemployment benefits.

121.    Because of the Kaseman Defendants' extreme and outrageous conduct toward the Plaintiffs was improperly motivated by reprisal and retaliation, and was intentional, willful and wanton, Plaintiffs Dey and Sekyere are entitled to punitive and exemplary damages in addition to compensatory damages.

## COUNT IV – KASEMAN DEFENDANTS' BREACH OF CONTRACT AND/OR PROMISSORY ESTOPPEL

122.    Plaintiffs incorporate by this reference the preceding paragraphs 1 through 121 of the Plaintiffs Complaint as though same were set forth at length herein.

123.    The Kaseman Defendants promulgated express and written and verbal statements of employment policies, practices and procedure which it provided and disseminated to all of its employees, including the Plaintiffs.

124.    The Kaseman Defendants, both orally and in writing, represented that they would treat employees in a specific, fair and equitable manner.  Specifically, the Kaseman Defendants promulgated a policy that employees would be terminated for cause and that discharged employees would be provided with a fair, impartial and unbiased appeals process.

125.    The Kaseman Defendants further represented, promised and/or implied both orally and in writing that an employee would only be discharged for cause, and after a reasonable investigation and opportunity to be heard.

126.    The customary pattern and practice of Kaseman Defendants was to follow their express and implied employment policies and practices, including the for cause and appeals process policies.

127.    Furthermore, the Kaseman Defendants represented, promised and/or implied that they would objectively evaluate and assess the performance and conduct of all employees in a fair, impartial and nondiscriminatory manner and then provide feedback.

128.    The Kaseman Defendants promulgated these policies and procedures, and made these representations, in such a manner as to manifest their willingness to enter into a bargain with their employees, including the Plaintiffs.

129.    Plaintiffs Dey and Sekyere assented to the Kaseman Defendants' offer regarding the employment policies and procedures by accepting employment and through oral representations in such a way as to conclude the bargain and exchange.

130.    The Plaintiffs' initial and/or continued employment with the Kaseman Defendants constituted acceptance of and consideration for the Kaseman Defendant's offer.  As additional consideration, the Plaintiffs executed non-competition and confidentiality agreements for the specific benefit of the Kaseman Defendants.

131.    The Kaseman Defendants breached their contracts with the Plaintiffs by their failure to follow their own practices, policies and procedures with regard to the terms and conditions of the Plaintiffs' employment as set forth herein.

132.    As set forth herein, the Kaseman Defendants intentionally, willfully and/or maliciously breached its contract with the Plaintiffs.

133.    Moreover, the Kaseman Defendants expected and/or should have reasonably expected Plaintiffs Dey and Sekyere to rely upon the aforementioned policies and procedures as a commitment by the Kaseman Defendants to follow and abide by them, including the "for cause" and appeals process and policy provisions thereunder.

134.    At all relevant times, the Plaintiffs understood and reasonably relied on the aforementioned policies and procedures to their detriment and harm, both pecuniary and otherwise.

135.    As set forth herein, the Kaseman Defendants did not follow the aforementioned employment practices, policies and procedures. Specifically, the Plaintiffs were not terminated for cause in that the Kaseman Defendants did not objectively and/or properly determine whether or not there was cause and the Kaseman Defendants did not follow their own policies, practices and procedures with regard to employee evaluation and disciplinary appeals process.

136.    Substantial injustice can only be avoided by enforcing the promises made by the Kaseman Defendants to the Plaintiffs.

137.    The Kaseman Defendants' breach of contract was a direct and proximate cause of the injuries, damages and harm suffered by the Plaintiffs and as set forth herein.

138.    The Kaseman Defendants' conduct was willful and wanton, and the Plaintiffs are entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under the common law.

## COUNT V – NEGLIGENCE BY DEFENDANTS MENON AND BAKER, individually and in their supervisory roles

139.    Plaintiffs incorporate by this reference the preceding paragraphs 1 through 138 of the Plaintiffs Complaint as though same were set forth at length herein.

140.    The Kaseman Defendants owed and continue to owe a duty of care to third parties, and more particularly to their employees such as Plaintiffs Dey and Sekyere, to prevent all their employees from acting in any way that harms co-employees.

141.   The Kaseman Defendants had a further duty to ensure that employee evaluation and disputes were properly handled and the disciplinary process conducted in a fair, impartial and/or non-discriminatory manner.

142.   The Kaseman Defendants voluntarily contracted, promised and/or agreed and thereby assumed a legal duty to ensure that employee evaluations and disputes were properly handled and the disciplinary process conducted in a fair, impartial and/or non-discriminatory manner, pursuant to its express employment policies.

143.   The Kaseman Defendants breached their duty of care owed to the Plaintiffs by and through the following acts and/or omissions, which include but are not limited to:

   i)   Failing to properly and adequately train its managerial employees, including Defendants Menon and Baker, to properly respond to complaints of racial discrimination and ethnic intimidation;

   ii)   Failing to properly and adequately train its managerial employees, including Defendant Menon and Baker, to prohibit discriminatory employment practices, including discrimination based on race, color, ethnicity and national origin;

   iii)   Failing to carefully and diligently supervise its employees, including Defendants Menon and Baker, to prevent them from improperly handling employee evaluations and performing employee performance evaluations in a non-discriminatory manner;

   iv)   Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees were mishandling complaints of racial discrimination and ethnic intimidation and conducting the employee performance evaluations in a discriminatory manner;

   v)   Failing to conduct a reasonable, proper and appropriate investigation of racial discrimination and ethnic intimidation complaints;

   vi)   Failing to abide by its own express and implied employment policies and procedures; and

   vii)   Failing to exercise reasonable care under the circumstances.

144.   The above-named Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiffs Dey and Sekyere.

145.     Because the Defendants' conduct toward the Plaintiffs was improperly motivated, and was intentional, willful and wanton, the Plaintiffs are entitled to punitive/exemplary damages in addition to compensatory damages.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

146.     Plaintiffs incorporate by this reference the preceding paragraphs 1 through 145 of the Plaintiffs Complaint as though same were set forth at length herein.

147.     As set forth herein, during their employment with the Kaseman Defendants, Plaintiffs Dey and Sekyere were subjected to a pattern of discrimination and misconduct in the workplace based, in whole or in part, on their race, color, ethnicity and national origin.

148.     At all relevant times, the above-named Defendants knew or should have known that Defendants Menon and Baker's allegations of incompetence against the Plaintiffs were pretextual and motivated by ethnic animus and discrimination based on their race, color and national origin, since the Kaseman Defendants did not have any Kaseman standards or any other objective standard for measuring competence.  Despite said knowledge, the Kaseman Defendants ignored the evidence and attempted to intimidate and coerce the Plaintiffs into foregoing their legal remedies.

149.     Despite actual and/or constructive knowledge that the aforesaid allegations were unfounded and pretextual, the Kaseman Defendants allowed the humiliated before their colleagues, and then terminated from their employment.  Furthermore, and upon information and belief, the Kaseman Defendants have communicated to third parties, including prospective employers and MDOL and VDOL, that the Plaintiffs were terminated for failure to meet Kaseman standards and for performing below expectations, despite actual and/or constructive knowledge that these allegations were false.

150.     The Kaseman Defendants, by branding the Plaintiffs as somehow inept and incompetent and then terminating their employment, acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to the Plaintiffs.

151.     The Kaseman Defendants' actions towards the Plaintiffs as set forth herein above, is further evidence of a pattern of race, color, ethnic race discrimination which further constitutes extreme, cruel and outrageous conduct.

152.     The conduct of the Kaseman Defendants was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

153.    The extreme and outrageous conduct of the Kaseman Defendants towards the Plaintiffs was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Plaintiffs Dey and Sekyere.

154.    As a direct and proximate result of the Kaseman Defendants' extreme and outrageous conduct, Plaintiffs Dey and Sekyere suffered severe emotional distress.

155.    Because the Defendants' extreme and outrageous conduct toward the Plaintiffs was improperly motivated, and was intentional, willful and wanton, Plaintiffs Dey and Sekyere are entitled to punitive/exemplary damages in addition to compensatory damages.

## COUNT VII - DEFAMATION

156.    Plaintiffs incorporate by this reference the preceding paragraphs 1 through 155 of the Plaintiffs Complaint as though same were set forth at length herein.

157.    On or about September 1, 2009, the Kaseman Defendants informed MDOL that Plaintiff Dey had been terminated for cause, including *inter alia* failing to meet Kaseman standards and performing below expectations.

158.    On or about November 1, 2009, the Kaseman Defendants informed VDOL that Plaintiff Sekyere had been terminated for cause, including inter alia failing to meet Kaseman standards and performing below expectations.

159.    Subsequently, and variously thereafter, the Kaseman Defendants repeated the aforesaid allegations to the Plaintiffs prospective employers.

160.    Upon information and belief, both MDOL and VDOL provided the Kaseman Defendants a forum by telephone appearance in unemployment benefits hearings within which to support and defend the aforesaid allegations.

161.    Despite being provided to adequate notice of the time and venue of the aforesaid hearings for unemployment hearings, the Kaseman Defendants neglected to and otherwise failed to appear as ordered.

162.    Upon information and belief, the Kaseman Defendants further repeated these and other similar allegations on numerous occasions to a variety of prospective employers, including but not limited to, MDOL and VDOL, and to others not presently known to Plaintiffs.

163.    All of the aforesaid oral and written statements by the Kaseman Defendants were thereafter reduced to writing and stored within the permanent employment records of the Plaintiffs at the Kaseman Defendants and MDOL and VDOL

164.    Furthermore, portions of the Kaseman Defendants' oral statements, which had been reduced to writing, were republished, circulated and/or otherwise disseminated at MDOL and VDOL for purposes the employments benefits hearing conducted subsequently, and to prospective employers.

165.    At all relevant times, the Kaseman Defendants knew that their statements and allegations of incompetence and ineptitude were false, pretextual and/or made with reckless disregard as to whether the statements were false or not.

166.    As set forth herein, neither Plaintiff Dey nor Plaintiff Sekyere was objectively evaluated or assessed by the Kaseman Defendants, and they have steadfastly denied all allegations against them.

167.    As noted herein, Kaseman Defendants' false oral and written defamatory statements specifically pertained to the Plaintiffs.

168.    As set forth herein, the Kaseman Defendants' false oral and written defamatory statements implicitly alleged without objective and/or subjective proof that the Plaintiffs Dey and Sekyere are incompetent and inept, which constitute libel and slander *per se*.

169.    Upon information and belief, the Kaseman Defendants, through their managerial and human resources employees, republished the aforesaid defamatory statements to prospective employers.

170.    The Kaseman Defendants' defamatory oral and written statements were a direct and proximate cause of the injuries, damages and harm suffered by the Plaintiffs.

171.    Because of the Kaseman Defendants' conduct towards the Plaintiffs was improperly motivated, and was intentional, willful and wanton, Plaintiffs Dey and Sekyere are entitled to punitive/exemplary damages in addition to compensatory damages.

172.    The Kaseman Defendants' publication of defamatory statements were direct and proximate causes of the injuries, damages and harms suffered by the Plaintiffs.

173.    Because the Defendants' conduct towards the Plaintiffs were improperly motivated, and was intentional, willful and wanton, Plaintiffs Dey and Sekyere are entitled to punitive/exemplary damages in addition to compensatory damages.

<u>DAMAGES</u>

174.    Plaintiffs incorporate by this reference the preceding paragraphs 1 through 173 of the Plaintiffs Complaint as though same were set forth at length herein.

175.    The conduct of the above-named Defendants, as set forth herein, in violating the Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981; and the common law of Virginia, caused injuries, damages and harm to the Plaintiffs, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

**WHEREFORE,** Plaintiffs James Dey and Kwaku Sekyere together request judgment and damages against Defendants D.C. Capital Partners, LLC, Kaseman, LLC, Siriam Menon, Mark Baker, Keith Yi and David Evazzadeh, jointly, severally and/or individually, as follows:

i)      A declaratory judgment that Defendants have violated the Plaintiffs' rights to be free from discrimination and retaliation in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; specifically 42 *U.S.C.* Section 1981; 42 *U.S.C.* Section 1981A;

ii)     Enter an injunction ordering the Kaseman Defendants to make the Plaintiffs whole with full back pay, benefits and reinstatement to a position Plaintiffs Dey and Sekyere would have obtained in the absence of discrimination and retaliation or, in the alternative, front pay.

iii)    An award to Plaintiffs Dey and Sekyere for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

iv)     An award to Plaintiffs Dey and Sekyere for exemplary and/or punitive damages in an amount to be shown at trial;

v)      An award for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended; specifically 42 *U.S.C.* Section 2000e-5(k), 42 *U.S.C.* Section 1981A, 42 *U.S.C* Section 1988 and as provided under state law;

vi)     An award to Plaintiffs Dey and Sekyere of interest on any awards at the highest rate allowed by law; and

vii)    Such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 19th day of March, 2012

By:_____
     James Dey, Pro Se Plaintiff


By:_____
     Kwaku Sekyere, Pro Se Plaintiff


## DEMAND FOR JURY TRIAL

Demand is hereby made by Pro Se Plaintiffs jointly for trial by a jury.